## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| ERIC GARDECKI, | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | No. 5:18-cv-03343 |
| | : | |
| EXETER TOWNSHIP, | : | |
| LISA VANDERLAAN, and | : | |
| WILLIAM WHITE, | : | |
| Defendants. | : | |
| | : | |

## **O P I N I O N**

**Defendants' Motion to Dismiss for Failure to State a Claim, ECF No. 4—Granted**

**Joseph F. Leeson, Jr.**                                                          **January 15, 2019**
**United States District Judge**

## I.      INTRODUCTION

Plaintiff Eric Gardecki initiated this action against his former employer, Defendant

Exeter Township, and two members of the Board of Supervisors of Exeter Township,

Defendants Lisa VanderLaan and William White, individually and in their official capacity as

members of the Board (together, the "Individual Defendants"). Gardecki asserts six claims in the

Complaint against the three Defendants deriving from his termination. Defendants filed a Motion

to Dismiss. For the reasons set forth below, the Motion to Dismiss is granted.

## II.      BACKGROUND[1]

For over 15 years, Gardecki worked as an employee of the Township, most recently in

the position of Geographic Information Systems (GIS) and Information Technology (IT)

---

[1]      The background information in this section is taken from the Township's Complaint and
is set forth as if true. *See Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 228 (3d Cir. 2008).

Administrator. Compl. ¶ 8, ECF No. 1. In this position, Gardecki's responsibilities included overseeing, maintaining, and supporting the Township's IT system. Compl. ¶ 9. He reported directly to the Township Manager and exercised broad discretion in implementing the Township's goals and objectives to maintain an effective and secure computer network. Compl. ¶ 10.

Gardecki associated with Cheryl Franckowiak, the Township Zoning Officer, for several years prior to and during the relevant period. Compl. ¶¶ 41-42. Their roles as employees of the Township required frequent job-related communication. Compl. ¶ 43. As friends and coworkers, the pair communicated frequently about Township business, workplace conditions, and other matters. Compl. ¶ 45.

Because of her position as the zoning officer, Franckowiak became involved in a controversy surrounding the operation of a home for disabled individuals in the Township by Supportive Concepts, Inc. Compl. ¶¶ 17, 23, 24, 28, 29, 30. Franckowiak approved the permit for Supportive Concepts in 2012. Compl. ¶ 17. The Township's Solicitor and Manager endorsed, at least tacitly, the issuance of the permit and took no action to intervene or object. Compl. ¶ 18. The Individual Defendants, who were not yet elected to the Board of Supervisors, allegedly opposed the location of the home for disabled individuals in the area and were upset by the approval of Supportive Concepts' zoning application. Compl. ¶ 19. The Individual Defendants attempted to organize efforts to shut down Supportive Concepts' planned home. Compl. ¶ 20-22. These efforts included privately pressuring Franckowiak to act against Supportive Concepts for nonexistent zoning violations and communicating with sitting Board members about Supportive Concepts. Compl. ¶ 22. Franckowiak responded by publicly and privately defending Supportive Concepts' activities as lawful and proper. Compl. ¶ 23. Franckowiak considered these efforts by

the Individual Defendants and a sitting Board member inappropriate and shared her concerns with others in the Township. Compl. ¶¶ 28, 39.

Gardecki and Franckowiak discussed this controversy frequently. Compl. ¶ 46. Before Defendant VanderLaan was elected, they also discussed VanderLaan's demeanor towards the Board and Township employees, her influence with certain Board members, and access to non-public information concerning Board and Township business before she became a member of the Board. Compl. ¶ 47. Following the Individual Defendants' election, Franckowiak expressed more urgent concerns about the developments in Township management and the need to take specific actions in response. Compl. ¶ 48.

When Franckowiak determined to take more specific actions—such as gathering information to expose wrongdoing by some or all of the Board, speaking to the Board about her concerns, speaking to other employees, publicly expressing her concerns, and/or reporting her concerns to an appropriate government body for investigation—Gardecki, although he shared the same concerns, limited his role to listening to Franckowiak and expressing his own thoughts and concerns with her. Compl. ¶¶ 49-51.

Gardecki became more concerned in March 2016 after the Township Solicitors allegedly coerced him into assisting an investigation into whether Township employees committed wrongdoing related to the Township's computer network. Compl. ¶ 52. The Township Solicitors asked that Gardecki provide a representative from a forensic IT firm contracted for the investigation access to the Township's locked server room and the password for the servers. Compl. ¶ 53. This type of access would allow the representative complete, unfettered, and unsupervised access to all the Township's data; something Gardecki had never heard of in his 15 years as an IT professional. Compl. ¶¶ 54, 56. This level of access made Gardecki anxious and

he initially expressed discomfort with providing it. Compl. ¶¶ 57-58. After a meeting with the Interim Township Manager and a Board member (not one of the Individual Defendants), Gardecki cooperated fully and provided access to the contractor. Compl. ¶ 58.

As a result of the investigation, the Township terminated Franckowiak. Compl. ¶ 38(f). Following this, Franckowiak contacted Gardecki and re-expressed concern that Board members and their agents were deleting or manipulating data on the Township's computer network to cover up wrongdoing and/or create pretext for her termination. Comp. ¶ 59. She suggested that Gardecki make a back-up copy of the servers to preserve evidence. Compl. ¶ 60. Gardecki made a back-up copy of the Township servers on a spare drive. Compl. ¶ 61. He intended to keep this drive in a secure place and to use it in the event it was needed as evidence. Compl. ¶ 61.

Without knowledge of the back-up Gardecki created, the Township terminated him the day after he made the copy in April 2016. Compl. ¶ 63. At the time of his termination, the Interim Township Manager gave Gardecki a two-page memorandum that set forth purported reasons for his termination. Compl. ¶ 64.

Following termination, Gardecki secured employment in the IT field with Stratix, Inc. as a Solutions Integrator. Compl. ¶ 74. Gardecki and Stratix were familiar with each other from Stratix's work with the Township while Gardecki worked there. Compl. ¶ 75. Stratix hired Gardecki with knowledge of his termination by the Township. Compl. ¶ 75. However, after almost two years of stable employment, Stratix terminated Gardecki over concerns that publicity from a lawsuit filed by the Township against Gardecki in this Court would make customers uneasy and be used against Stratix by competitors. Compl. ¶ 77. Stratix's concerns stemmed from the Township rejecting the bid of a Stratix affiliate and communicating to the affiliate or Stratix that it rejected the bid because Gardecki worked for Stratix. Compl. ¶¶ 78-79.

### III. LEGAL STANDARDS

Federal Rule of Civil Procedure 12(b)(6) allows a court to dismiss a complaint for its "failure to state a claim upon which relief can be granted." Fed. R. Civ. 12(b)(6). The Rules generally demand "only a short and plain statement of the claim showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the claim is and the grounds upon which it rests." *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 786 (3d Cir. 2016) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotations omitted)).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). In rendering a decision on a motion to dismiss, this Court must "accept all factual allegations as true [and] construe the complaint in the light most favorable to the plaintiff." *Phillips*, 515 F.3d at 233 (3d Cir. 2008) (quoting *Pinker v. Roche Holdings Ltd.*, 292 F.3d 361, 374 n.7 (3d Cir. 2002)) (internal quotation marks omitted). Only if "the '[f]actual allegations . . . raise a right to relief above the speculative level'" has the plaintiff stated a plausible claim. *Id.* at 234 (quoting *Twombly*, 550 U.S. at 555). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Id.* (explaining that determining "whether a complaint states a plausible claim for relief . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense"). The defendant bears the burden of demonstrating that a plaintiff has failed to state a claim upon which relief can be

granted. *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005) (citing *Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1409 (3d Cir. 1991)).

## IV.    ANALYSIS

As referenced above, Gardecki's Complaint asserts six claims.[2] In Count I of the Complaint, Gardecki alleges that Defendants[3] violated his First Amendment rights of freedom of speech and association by terminating him because of, and in retaliation for, his exercise of these rights through his relationship and the sharing of thoughts and communications with Franckowiak about her allegedly protected activities. In Count II of the Complaint, Gardecki alleges that Defendants violated the Fair Housing Act (FHA) by discharging him and through other acts of retaliation against him because of his efforts to assist Franckowiak in her efforts to aid and encourage others to exercise rights under the FHA. In Count IV, Gardecki alleges a violation of his rights by the Township under the Constitution of the Commonwealth of Pennsylvania when the Township terminated him and otherwise retaliated against him. In Count VI, Gardecki alleges the Township violated public policy when it terminated him. In Count VII, Gardecki asserts a claim of tortious interference with a business relationship, alleging that the Township intentionally and tortuously interfered with Gardecki's employment and business relationship with Stratix when it communicated to an affiliate of Stratix the reasons alleged by the Township for terminating Gardecki which led to Gardecki's termination from Stratix. In Count VIII, Gardecki makes a claim for civil conspiracy based upon the Individual Defendants'

---

[2]    Gardecki's Complaint includes six counts total. However, he labels them Counts I, II, IV, VI, VII, and VIII.

[3]    Counts I, II, and VIII are against all Defendants. Counts IV, VI, and VII are only against the Township.

conspiring with the Township to restrict or eliminate a company operating homes for the disabled in the Township.

Defendants move to dismiss each of these claims on a variety of grounds. *See* Mot. Dismiss, ECF No. 4. For the reasons set forth below, Defendants' motion is granted with respect to Counts I and II. The Court will allow Gardecki leave to file an Amended Complaint with respect to these Counts. Because the Court dismisses all federal claims, the Court exercises its discretion and declines to exercise supplemental jurisdiction over the remaining state law claims.

## A. First Amendment Claim

Gardecki brings a First Amendment claim against Defendants for retaliating against him for exercising his First Amendment free speech and association rights. Gardecki contends that he engaged in protected speech and association by "his association with Franckowiak and her Protected Activities, and his own participation in those Protected Activities, including (without limitation) the sharing of thoughts and communications" about the controversy surrounding Supportive Concepts and Franckowiak's plan to act. Compl. ¶ 83. Gardecki's First Amendment claim fails because his speech on behalf of, and association with, Franckowiak was made pursuant to his position with the Township.

Section 1983 provides a cause of action for the "deprivation of any rights, privileges, or immunities secured by the Constitution and laws." 42 U.S.C. § 1983. To prevail on a claim of retaliation under § 1983 predicated on the First Amendment, a plaintiff employee must show that "(1) he engaged in 'constitutionally protected conduct,' (2) the defendant engaged in 'retaliatory action sufficient to deter a person of ordinary firmness from exercising his constitutional rights,' and (3) 'a causal link [existed] between the constitutionally protected conduct and the retaliatory

action.'" *Palardy v. Twp. of Millburn*, 906 F.3d 76, 80-81 (3d Cir. 2018) (quoting *Thomas v. Indep. Twp.*, 463 F.3d 285, 296 (3d Cir. 2006)).[4]

The Supreme Court of the United States makes clear that public employees, by nature of their employment, do not surrender all their First Amendment rights. *Garcetti v. Ceballos*, 547 U.S. 410, 417 (2006). Still, to receive First Amendment protection from retaliation in the workplace an employee must "speak as a citizen addressing matters of public concern." *Id.*; *see also Palardy*, 906 F.3d at 81 ("Insofar as workplace speech is concerned . . . public employees only receive First Amendment protection from retaliation in the workplace when they speak out on a matter of public concern and their interest in speaking outweighs the government's interest in promoting workplace efficiency and avoiding disruption."). If a public employee does not speak as a "citizen" and the speech does not involve a matter of "public concern," that employee

---

[4]     The parties' papers present different, though substantively equivalent, standards for First Amendment retaliation claims under § 1983. This is not surprising as in various instances, the United States Court of Appeals for the Third Circuit used both standards identified by the parties interchangeably in First Amendment retaliation claims under § 1983. *Compare Dougherty v. Sch. Dist.*, 772 F.3d 979, 986 (3d Cir. 2014) ("To establish a First Amendment retaliation claim, a public employee must show that (1) his speech is protected by the First Amendment and (2) the speech was a substantial or motivating factor in the alleged retaliatory action, which, if both are proved, shifts the burden to the employer to prove that (3) the same action would have been taken even if the speech had not occurred."); *Gorum v. Sessoms*, 561 F.3d 179, 184 (3d Cir. 2009) (same); *Ambrose v. Twp. of Robinson*, 303 F.3d 488, 493 (3d Cir. 2002) (same); *Suppan v. Dadonna*, 203 F.3d 228, 235 (3d Cir. 2000) (same); w*ith Palardy*, 906 F.3d at 80 ("To prevail on a § 1983 First Amendment retaliation claim, the plaintiff must prove that (1) he engaged in constitutionally protected conduct, (2) the defendant engaged in retaliatory action sufficient to deter a person of ordinary firmness from exercising his constitutional rights, and (3) a causal link [existed] between the constitutionally protected conduct and the retaliatory action." (internal citations omitted)); *Lauren W. v. DeFlaminis*, 480 F.3d 259, 267 (3d Cir. 2007) (same); *Thomas*, 463 F.3d at 296 (same); *Estate of Smith v. Marasco*, 318 F.3d 497, 512 (3d Cir. 2003) (same).

        Because *Palardy* concerned a situation that is comparable to the instant matter—an employment relationship between the plaintiff and defendant—and *Palardy* is one of, if not the most, recent decisions in the United States Court of Appeals for the Third Circuit that concern an alleged violation of § 1983, the Court will use the standard articulated therein.

has no First Amendment cause of action based on his or her employer's reaction to the speech. *Garcetti*, 547 U.S. at 418. Following the Supreme Court's decision in *Garcetti*, "[a] public employee's statement is protected activity when (1) in making it, the employee spoke as a citizen, (2) the statement involved a matter of public concern, and (3) the government employer did not have "an adequate justification for treating the employee differently from any other member of the general public" as a result of the statement he made." *Hill v. Borough of Kutztown*, 455 F.3d 225, 241-42 (3d Cir. 2006) (quoting *Garcetti*, 547 U.S. at 418).

As mentioned above, Gardecki alleges in his Complaint that the Township terminated him "because of, and in retaliation for, his association with Franckowiak and her Protected Activities, and his own participation in those Protected Activities, including (without limitation) the sharing of thoughts and communications" about the controversy surrounding Supportive Concepts and Franckowiak's plan to act. Compl. ¶ 83. Defendants argue that Gardecki's First Amendment claim fails as a matter of law because Gardecki does not sufficiently allege that he engaged in constitutionally protected activities. Def.'s Br. Supp. Mot. Dismiss 8, ECF No. 4. Defendants address Gardecki's claim for First Amendment protection on two grounds: speech and association. Def.'s Br. Supp. Mot. Dismiss 12, 17. Gardecki argues that his Complaint makes out a claim for retaliation based on his association with Franckowiak and her protected activities that involved communications and sharing of ideas. Pl.'s Br. Opp'n Mot. Dismiss 17, ECF No. 9. He challenges Defendants' separate analyses for speech and association as an attempt to create a false dichotomy between Gardecki's speech and association with Franckowiak and Franckowiak's allegedly protected activities. Pl.'s Br. Opp'n Mot. Dismiss 10.

This Court recognizes the reasoning as to why Defendants would separate their analysis and does not view it as an attempt to create a false dichotomy. The Complaint clearly indicates in

the heading for Count I that the count concerns both free speech and expressive association. Separate analysis of Gardecki's free speech and free association claims is, however, unnecessary. In *Sanguigni v. Pittsburgh Bd. of Pub. Educ.*, the United States Court of Appeals for the Third Circuit applied the same Supreme Court standard to an employee's freedom of association claim as it did that employee's free speech claim because the association claim implicated the employee's associational rights in essentially the same way and to the same degree as that employee's free speech claim. 968 F.2d 393, 400 (3d Cir. 1992). The school teacher employee in *Sanguigni* made statements in a faculty newsletter that were intended to gather opposition to the school administration. Here, Gardecki asserts that through communications and sharing of ideas with Franckowiak the pair engaged in the protected activity of association to advance shared concerns, beliefs, and ideas about the Township. Pl.'s Br. Opp'n Mot. Dismiss 12; *see also* Compl. ¶ 84 ("Gardecki's association with Franckowiak and her Protected Activities, and his own participation in those Protected Actives, were a proper and lawful exercise of his rights of freedom of speech and association, protected under the First Amendment"). Because Gardecki's case, like *Sanguigni*, implicates associational rights in essentially the same way and to the same degree as his free speech claim this Court applies the Supreme Court's *Garcetti* standard to both claims. Thus, for these claims, this Court must first determine whether Gardecki engaged in protected conduct. This question, in turn, depends on whether Gardecki spoke as a citizen on a matter of public concern. Gardecki's claim fails at this step of this analysis because he did not speak as a citizen.

"[W]hen public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline." *Garcetti*, 547 U.S. at 421.

"Therefore, the 'critical question' for determining whether a public employee's speech is protected under the First Amendment 'is whether the speech at issue is itself ordinarily within the scope of an employee's duties, not whether it merely concerns those duties.'" *Pasqua v. Cnty. of Hunterdon*, 721 F. App'x 215, 221 (3d Cir. 2018) (quoting *Lane v. Franks*, 573 U.S. 228, 239 (2014)).

Gardecki acknowledges that standard but argues that his communications with Franckowiak were not within the ordinary scope of their duties. Pl.'s Br. Opp'n Mot. Dismiss 12 n.4. This assertion does not change the fact that Gardecki describes these communications in his Complaint as "frequent job-related communication." Compl. ¶ 43. Further, citing that same portion of the Complaint, Gardecki explains when he and Franckowiak engaged in these "frequent job-related communication[s]" they were engaged in protected activity. Similarly, Gardecki's claim includes speech that concerned other job-related issues. For example, he "expressed discomfort" with providing an outside consultant access to the Township's server at a meeting with the Interim Township Manager and a Township Board member. Compl. ¶¶ 57-58.

"[I]f a discrete unit of speech addresses only the employee's own problems, and even if those problems 'brush . . . against a matter of public concern' by virtue of that employee's public employment, then that speech is merely a 'personal grievance.'" *De Ritis v. McGarrigle*, 861 F.3d 444, 455 (3d Cir. 2017) (quoting *Miller v. Clinton Cnty.*, 544 F.3d 542, 551 (3d Cir. 2008)). Personal grievances limited to the "day-to-day minutiae" of employment does not address a matter of public concern and does not benefit from First Amendment protection. *Id.*

Gardecki's speech identified in the Complaint appears to concern more of the day-to-day minutiae of employment. As friends and coworkers, Gardecki and Franckowiak communicated frequently about Township business, workplace conditions, and matters of public and private

concern in the Township and among its employees, such as the controversy Franckowiak was involved in because of her job as zoning officer. Compl. ¶ 45. Other topics of their communications were the way in which VanderLaan acted towards the Board and Township employees, her influence with certain Board members, and access to non-public information concerning Board and Township business before she was a proper member of the Board. Compl. ¶ 47. While not always polite, discussions between coworkers about the current projects on which they are working, workplace conditions, supervisors or executives, and general gossip are commonplace in businesses and organizations around the country, and courts do not extend First Amendment protection to these discussions.

As alleged, and even when construing the complaint in the light most favorable to him, Gardecki's speech falls within the scope of his employment. As such, the Constitution does not insulate his communications from employer discipline and this count is dismissed for failure to state a claim upon which relief can be granted.[5]

## B. FHA Claim

In the second count, Gardecki alleges that his termination was a part of a Township policy to restrict or eliminate a lawful operation of homes for the disabled and suppress opposition to the policy, in violation of the FHA. Compl. ¶¶ 95-103. Defendants argue that Gardecki's FHA claim fails as a matter of law because: (1) Gardecki fails to sufficiently allege that Defendants coerced, intimidated, threatened, or interfered with any person's exercise of

---

[5]     Because the Court finds that Gardecki did not speak as a citizen, Defendants' arguments that: (1) Gardecki did not speak on a matter of public concern, (2) the Township's interest in efficiency overrides Gardecki's interests, (3) Gardecki's alleged expressive association was not constitutionally protected, or (4) the First Amendment does not protect theft need not be addressed.

rights under the FHA; (2) Gardecki does not allege that he aided or encouraged anyone in the exercise of those rights; and (3) the doctrine of qualified immunity precludes the FHA claim as asserted against the Individual Defendants. Def.'s Br. Supp. Mot. Dismiss 9. Gardecki argues that he set forth a claim for retaliation in violation of the FHA in his Complaint. Pl.'s Br. Opp'n Mot. Dismiss 17. He argues further that qualified immunity is not available here because the Individual Defendants' conduct does not meet the objectively reasonable test. *Id*. at 20. As explained below, Gardecki's FHA claim fails because he has failed to plead a *prima facie* case of retaliation.

The FHA makes it "unlawful to coerce, intimidate, threaten, or interfere with any person in the exercise or enjoyment of, or on account of his having exercised or enjoyed, or on account of his having aided or encouraged any other person in the exercise or enjoyment of, any right granted or protected . . . ." by the FHA. 42 U.S.C. § 3617. A retaliation claim, like the one Gardecki alleges, is "analyzed under the burden-shifting framework established by the Supreme Court." *Newell v. Heritage Senior Living, LLC*, No. 12-cv-6094, 2016 U.S. Dist. LEXIS 13416, at *21 (E.D. Pa. Feb. 3, 2016) (citing *Madison v. Phila. Hous. Auth.*, No. 09-cv-3400, 2010 U.S. Dist. LEXIS 62217, at *9 (E.D. Pa. June 23, 2010)).

Under this framework, "a plaintiff must first establish a prima facie case of retaliation under Section 3617 by demonstrating: (1) that [he] engaged in a protected activity; (2) that the defendants subjected [him] to an adverse action; and (3) that a causal link existed between the protected activity and the adverse action." *Newell*, 2016 U.S. Dist. LEXIS 13416, at *21-22 (internal citations and quotations omitted). Then, after establishing those elements, "the burden shifts to the defendant to articulate a legitimate nondiscriminatory reason for its decision. If the

defendant articulates such a reason, the plaintiff bears the ultimate burden of demonstrating that the reason was merely a pretext for a discriminatory motive." *Id*.

Gardecki's Complaint fails to allege that he engaged in a protected activity. As explained above, a person engages in a "protected activity" if that person aids or encourages another person in the exercise or enjoyment of any right granted or protected by the FHA. Gardecki submits that the Complaint alleges that he aided or encouraged another person in the exercise or enjoyment of a right granted or protected by § 3604 of the FHA. Section 3604 makes it unlawful to discriminate in sale or rental, or to otherwise make unavailable or deny, dwelling to any buyer or renter because of a handicap. 42 U.S.C. § 3604.

Gardecki's Complaint, however, does not include sufficient facts to demonstrate that Gardecki aided or encouraged another person in the exercise or enjoyment of a right protected by § 3604. Instead, Gardecki attempts to stretch the protection of the FHA to cover his alleged aiding or encouraging Franckowiak who allegedly opposed the Township's plan to deny Supportive Concepts the ability to house handicapped individuals. Under Gardecki's proposed theory, this provision of the FHA would protect an individual who aided or encouraged a person who, in turn, aided or encouraged another person who provided services for individuals protected by the FHA. Gardecki references no authority, nor can the Court find any, supporting this expansion of the FHA.

Further, even assuming *arguendo* Gardecki's proposed theory, it is not clear from the Complaint whether Franckowiak's actions would reasonably be considered to come within the ambit of aiding or encouraging persons in the exercise or enjoyment of any right granted or protected by the FHA. In his complaint Gardecki describes how Franckowiak generally spoke out against developments in Township management as it related to the Supportive Concepts

controversy and need to take specific actions in response. Compl. ¶ 48. These specific actions included gathering information to expose wrongdoing by some or all the Board, speaking to the Board about her concerns, speaking to other employees, publicly expressing her concerns, and/or reporting her concerns to an appropriate government body for investigation. Compl. ¶¶ 49-51.

Courts have customarily found individuals to be aiding or encouraging another person where there is a specific act connecting those persons. *See Nevels v. W. World Ins. Co.*, 359 F. Supp. 2d 1110, 1118 (W.D. Wash. 2004) (landlord who provided rentals to residents with mental illnesses aided or encouraged people with mental illnesses in the exercise or enjoyment of rights granted or protected by the FHA); *Walker v. City of Lakewood*, 272 F.3d 1114, 1128 (9th Cir. 2001) (advocacy efforts–including meeting with potential plaintiffs, presenting them with their options, and referring them to an attorney–held to be aiding or encouraging under § 3617)*; Wilkey v. Pyramid Constr. Co.*, 619 F. Supp. 1453, 1454 (D. Conn. 1985) (a rental agent that accepted applications from, and showed and rented apartments to, black prospective tenants "aided or encouraged" others in the exercise of their rights); *Stackhouse v. De Sitter*, 620 F. Supp. 208, 211 (N.D. Ill. 1985) ("One example of a situation falling within the scope of the third phrase is when an apartment building owner fires or otherwise retaliates against a building manager who has rented a unit to a black (or other minority member) against the owner's wishes."); *Smith v. Stechel*, 510 F.2d 1162, 1164 (9th Cir. 1975) (managers of apartment complex fired for renting to Mexican Americans fell within the ambit of § 3617). As described in the Complaint, Franckowiak generally opposed acts taken against Supportive Concepts; she is not described to have interacted with protected individuals.

Because Gardecki has not alleged sufficient facts in the Complaint that he was engaged in a protected activity, Gardecki has not stated a plausible claim for relief under the FHA for a retaliation claim.

## C.  Remaining state law claims

After dismissing Counts I and II, the only claims that remain in this case are state law claims which allege a violation of Gardecki's rights under Article I, Sections 1 and 7 of the Pennsylvania Constitution (Count IV), wrongful discharge in violation of public policy (Count VI), tortious interference with a business relationship (Count VII), and civil conspiracy (Count VIII). Defendants also move to dismiss these claims and assert several arguments in support of their position. This Court will not determine whether Gardecki properly pled these state law claims because, having already dismissed federal claims, this Court exercises its discretion and declines to exercise supplemental jurisdiction over the state law claims. *See Gallo v. Wash. Cnty.*, No. 08-cv-0504, 2009 U.S. Dist. LEXIS 7958, at *27-30 (W.D. Pa. Feb. 4, 2009) (using the Court's discretion to refuse to exercise supplemental jurisdiction and dismissing remaining state claims to be refiled in the proper state forum); *Atkinson v. Olde Economie Fin. Consultants, Ltd.*, No. 2:05-cv-772, 2006 U.S. Dist. LEXIS 54289, at *3-9 (W.D. Pa. Aug. 4, 2006) (dismissing a case without prejudice and remanding to state court for consideration of remaining state law claims after declining to exercise supplemental pendent jurisdiction over plaintiff's remaining claims because there were no claims remining in the case with jurisdiction pursuant to federal question, 28 U.S.C. § 1331, or diversity jurisdiction, 28 U.S.C. 1367(c)). In the event Gardecki does not file an Amended Complaint, the remaining claims will be remanded to the Court of Common Pleas of Berks County, Pennsylvania, where the action was filed. *See Combs*

*v. Homer-Center Sch. Dist.*, 540 F.3d 231, 253 (3d Cir. 2008) (declining to exercise supplemental jurisdiction over a pendent state law claim and remanding to a state forum).

## V.       CONCLUSION

For the reasons stated above, Defendants' Motion to Dismiss is granted. The Court will allow Gardecki leave to file an Amended Complaint with respect to Counts I and II. A separate order follows.

BY THE COURT:


*/s/ Joseph F. Leeson, Jr.*
JOSEPH F. LEESON, JR.
United States District Judge